MOORE, J.,
Concurring and Dissenting. — I agree with most of the majority opinion. The majority found the trial court erred in failing to instruct the jury on the defense of unconsciousness as a result of defendant taking drugs to combat her cancer (chemotherapy) and to overcome the effects of chemotherapy. (Maj. opn., ante, at p. 609.) I concur in that decision. I respectfully dissent, however, from the conclusion that the error was harmless. I also would find the court prejudicially erred in failing to instruct on unconsciousness without reference to voluntary intoxication.
Defendant’s oncologist, Dr. Andreea Nanci, described defendant’s chemotherapy regimen. She pointed out one of the drugs in her treatment is known to cause potential neurotoxicity. Exactly how the drug causes the neurotoxicity is subject to ongoing research. One side effect of the chemotherapy treatment defendant received is known as “chemo brain.” A doctor testified “most chemotherapy agents can result in significant . . . incidence of . . . delirium, agitation, psychoses, [and] fluctuating levels of consciousness.” (Italics added.) When side effects occur, they last “at least several weeks, usually more, months, in occasional patients, years.” The reason is because there is not just the immediate effect of the chemotherapy drugs, but also their cumulative effect as an affected patient goes through each additional cycle of chemotherapy. Defendant went through four cycles of chemotherapy. It is important to note, “the particular side effects for a given patient cannot be predicted because everybody is different.”
“Unconsciousness, if not induced by voluntary intoxication, is a complete defense to a criminal charge. ([Pen. Code,] § 26, class Four; People v. Coogler (1969) 71 Cal.2d 153, 170 [77 Cal.Rptr. 790, 454 P.2d 686]; People v. Newton (1970) 8 Cal.App.3d 359, 376 [87 Cal.Rptr. 394]; see also [Pen. Code,] § 20 [to constitute a crime there must exist a joint operation of act and intent].) To constitute a defense, unconsciousness need not rise to the level of coma or inability to walk or perform manual movements; it can exist ‘where the subject physically acts but is not, at the time, conscious of acting.’ (Newton, at p. 376.) If the defense presents substantial evidence of unconsciousness, the trial court errs in refusing to instruct on its effect as a complete defense. (Id. at p. 377, citing People v. Wilson (1967) 66 Cal.2d 749, 764 [59 Cal.Rptr, 156, 427 P.2d 820].)” (People v. Halvorsen (2007) 42 Cal.4th 379, 417 [64 Cal.Rptr.3d 721, 165 P.3d 512].) On the other hand, unconsciousness “ ‘is not a complete defense’ ” when it results from voluntary intoxication (People v. *616 Ochoa (1998) 19 Cal.4th 353, 423 [79 Cal.Rptr.2d 408, 966 P.2d 442]), but it may reduce a murder to involuntary manslaughter (People v. Ferguson (2011) 194 Cal.App.4th 1070, 1081-1082 [124 Cal.Rptr.3d 182]).
In terms of voluntary intoxication, I see a distinction between ingesting alcohol or narcotics, and undergoing chemotherapy. Subjecting one’s self to chemotherapy can hardly be considered “voluntary” on the part of the cancer patient when the alternative is death. Here, defendant had a particularly aggressive cancer that already required a double mastectomy. Surely we would not hold a defendant’s statement to police was “voluntary” if it was made in response to a threat of death. (See People v. Williams (1997) 16 Cal.4th 635, 659 [66 Cal.Rptr.2d 573, 941 P.2d 752] [prosecution bears burden of proving voluntary nature of confession]; U.S. v. Tingle (9th Cir. 1981) 658 F.2d 1332, 1335 [exploiting mother’s fear that she would not see her child for a long time if she failed to cooperate made subsequent statement involuntary].)
In terms of intoxication, itself, there is a difference between voluntarily ingesting alcohol or narcotics — acts which may be undertaken to acquire an intoxicated state, and which everyone knows adversely affects the way the brain reacts — and receiving chemotherapy. While there was testimony chemotherapy may have certain side effects, nobody undergoes chemotherapy to become intoxicated.
The majority concludes the error in failing to instruct on unconsciousness was harmless. (Maj. opn., ante, at p. 610.) In doing so, the majority noted the jury had not only been instructed that it could consider any hallucination or delusion in determining on the issues of whether she killed or attempted to kill with deliberation and premeditation, and/or by lying in wait, that intoxication by defendant could be considered in determining whether defendant had the required specific intent or mental state, but also that “it could consider the evidence of mental disease, defect, or disorder in determining whether defendant ‘actually formed the required specific intent or mental state[s].’ ” (Ibid.) The majority reasoned that as the jury returned a verdict of guilty for first degree murder, which required the jury to find defendant premeditated and deliberated killing her husband, or killed him by means of lying in wait, the jury rejected evidence of defendant’s unconsciousness. (Ibid.)
I agree that when there is reason to believe the jury through its verdict impliedly rejected a defense theory, the failure to instruct on that theory may be harmless under state law. (See People v. Maury (2003) 30 Cal.4th 342, 422 [133 Cal.Rptr.2d 561, 68 P.3d 1] [error harmless where although defendant was deprived of the complete defense he used the same evidence to mitigate *617 crime]; People v. Lewis (2001) 25 Cal.4th 610, 646 [106 Cal.Rptr.2d 629, 22 P.3d 392] [“failing to instruct the jury on a lesser included offense is harmless when the jury necessarily decides the factual questions posed by the omitted instructions adversely to defendant. . .”]; People v. Millwee (1998) 18 Cal.4th 96, 157 [74 Cal.Rptr.2d 418, 954 P.2d 990] [“failure to instruct on a lesser included offense is not prejudicial where ‘the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant ...’”].)
The majority’s analysis, to my mind, does not demonstrate the failure to instruct on unconsciousness was harmless. Here is why. People generally think if an individual undertakes some action — walking, talking, shooting a gun, for example — that action can only be done by someone who is conscious. Unconsciousness is generally thought of as meaning an individual is comatose or otherwise incapable of movement, bht that is not what the law holds. In fact, when the court and counsel discussed proposed jury instructions, the prosecutor argued there was no evidence of unconsciousness. In doing so, he urged the fact that defendant opened her eyes when asked questions by a responding paramedic demonstrated she was conscious. But as CALCRIM No. 626 states, one who is unconscious “may still be capable of physical movement but may not be aware of his or her actions or the nature of those actions.” (Italics added.) For purposes of a defense, “ ‘[unconsciousness need not reach the physical dimensions commonly associated with the term (coma, inertia, incapability of locomotion or manual action, and so on); it can exist . . . where the subject physically acts in fact but is not, at the time, conscious of acting.” (People v. Newton, supra, 8 Cal.App.3d at p. 376, fn. omitted.) Without informing the jury of this fact, the jurors would have no reason to conclude defendant was not conscious during any of her actions. The conclusion is unavoidable that jurors would fall into the same misconception the prosecutor demonstrated; assuming any action on defendant’s part — including opening her eyes — means she was conscious. Thus, the jury’s verdict cannot be said to have been the result of the jury’s rejection of an unconsciousness defense. Consequently, the error was not harmless under People v. Watson (1956) 46 Cal.2d 818 [299 P.2d 243]. (People v. Breverman (1998) 19 Cal.4th 142, 170 & fn. 19 [77 Cal.Rptr.2d 870, 960 P.2d 1094].)
Because the error was prejudicial under Watson, there is no need to determine whether the failure to instruct on involuntary unconsciousness is governed by a more stringent reversible error standard. (See People v. Newton, supra, 8 Cal.App.3d at p. 377 [“Where evidence of involuntary unconsciousness has been produced in a homicide prosecution, the refusal of a requested instruction on the subject, and its effect as a complete defense if found to have existed, is prejudicial error.”]; Neder v. United States (1999) 527 U.S. 1, 19 [144 L.Ed.2d 35, 119 S.Ct. 1827] [failure to instruct on issue of materiality in a mail fraud case was harmless where issue was not contested *618 and evidence established the element as a matter of law, but result would have been different if defendant contested the element and raised evidence on the issue].)
The trial court’s failure to instruct on unconsciousness was prejudicial error. Without receiving an instruction on unconsciousness, the jury was presumably unaware that one may commit an act without being conscious of the act. Consequently, defendant’s conviction cannot be considered an implied rejection of a complete defense the jury had not been instructed on, especially when the instruction is contrary to what most people believe. Accordingly, I would reverse.
A petition for a rehearing was denied May 27, 2015. Moore, J., was of the opinion that the petition should be granted. Appellant’s petition for review by the Supreme Court was denied August 12, 2015, S227023.